Leroy J. VANDAL, Plaintiff and Appellant,

v.

PEAVEY COMPANY, A DIVISION OF CONAGRA and Kenneth Bulie, f/d/b/a Bulie Custom Service, Defendants and Appellees.

Civ. No. 940072.

Supreme Court of North Dakota.

Oct. 27, 1994.

Todd A. Schwarz, Frith, Schwarz & Steffan, Devils Lake, for plaintiff and appellant. Submitted on brief.

William C. Severin, Severin and Ringsak, Bismarck, for defendant and appellee Peavey Co.

Thomas E. Rutten, Traynor, Rutten & Traynor, Devils Lake, for defendant and appellee Kenneth Bulie.

VANDE WALLE, Chief Justice.

Leroy J. Vandal appealed from two Towner County district court summary judgments in favor of defendants Peavey Company and Kenneth Bulie, formerly doing business as Bulie Custom Service. We affirm.

Vandal owned the Cando Greenhouse in Cando, North Dakota. His property adjoined property owned by Kenneth Bulie, doing business as Bulie Custom Service. The Peavey elevator is located nearby. Beginning in 1987, Vandal maintained a soil pile near the boundary between his property and Bulie's. In 1989 and 1990, Vandal used soil from this pile with satisfactory results for his greenhouse business. However, in April of 1991, Vandal discovered extensive damage to much of his plant inventory and eventually traced the problem to the soil pile. Soil and plant samples were found to contain several herbicides which could have caused the damage. These were identified as Treflan, 2–4–D, Vutyrac, Banvel, and Tordon.

In May 1992, Vandal filed suit against Bulie, alleging that the chemicals found in the soil pile originated in tanks which Bulie, a licensed farm chemical applicator, regularly parked on his land near the soil pile. Vandal alleged that these tanks leaked chemicals that were eventually washed onto his soil pile. Bulie's insurance company notified Bulie that because the alleged cause of the problem was a leak, and not negligent spraying, the insurance did not cover his liability. In December 1992, Bulie and Vandal reached a settlement which released the "parties to this agreement from any and all further claims ... arising from or in relation to this chemical contamination of the Plaintiff's soil." In the settlement Bulie agreed to pay $5,000 in three annual installments. The first installment was due January 1, 1993. Bulie missed the first payment. On January 5, 1993, the parties renegotiated the settlement. The renegotiated settlement agreement required Bulie to testify for Vandal in his suit against Peavey Company.

Vandal sued Peavey Company, alleging in his suit that bags had blown from its elevator to his property and relying on Bulie's opinion that the damage must have been caused by a combination of his company's handling of chemicals and the blowing bags from Peavey. However, during preparation for the suit against Peavey, Bulie informed Vandal's attorney that his crew had likely negligently sprayed the soil pile and that leakage was probably not to blame for the damage. By stipulation Vandal's complaint against Peavey was amended to include Bulie as a defendant.

We "have previously expressed our reluctance to approve summary judgment[s] in negligence actions." *Heimer v. Privratsky*, 434 N.W.2d 357, 358 (N.D.1989). However, once a party moving for summary judgment shows there is no genuine issue of material fact, the answering party, in order to avoid summary judgment, must show the existence of a material factual issue by providing competent, admissible evidence by af-

fidavit or comparable means. *Stewart v. Ryan*, 520 N.W.2d 39 (N.D.1994). Rule 56(e), N.D.R.Civ.P., requires that "[s]upporting and opposing affidavits must be made on personal knowledge, set forth such facts as would be admissible in evidence, and show affirmatively that the affiant is competent to testify to the matters stated therein."

■ Peavey supported its motion for summary judgment with affidavits from Greg Dahl, a pesticide program specialist with the NDSU Extension Service, and Steve Jordan, the manager of the Peavey Company Elevator from the fall of 1990 to the spring of 1991. Dahl, who tested plant samples from Vandal's greenhouse, stated in his affidavit that the damage to the samples indicated the presence of "growth regulator herbicides such as 2,4–D, MCPA, Banvel, Tordon, Curtail." He also indicated that any granular chemicals which could have been spilled from blowing bags from Peavey would have been "preemergence type herbicides." It was his expert opinion that the damage to Vandal's plants "was not caused by the Peavey Elevator in Cando." This testimony is consistent with that of Steve Jordan, whose affidavit stated that during the relevant time period Treflan was the only implicated chemical sold in granular form by Peavey. Jordan also stated that the liquid chemicals sold by Peavey were sold in closed containers and were not opened on the Peavey premises. Jordan's affidavit was uncontradicted.

The affidavits submitted in support of Peavey's motion for summary judgment satisfy the requirements of a moving party under Rule 56(e). They contain statements of personal knowledge made under oath. Therefore, summary judgment is appropriate unless Vandal has met the burden placed on the answering party by Rule 56(e).

Vandal relied on the testimony of Bulie to answer the affidavit of Dahl, Peavey's expert. However, Bulie's qualifications as an expert are not entirely apparent in the record and his testimony fails to contradict that of Dahl's. When asked what effect Treflan would have on the types of plants grown in the greenhouse, Bulie answered, "I guess, that I don't know. I know what it does to the regular field crops and weeds in the field, but as far as vegetables and garden type plants, I'm not familiar with that." Vandal provided no affidavits from witnesses who had personal knowledge of bags blowing from Peavey onto his property. When asked by the trial court about the blowing bags, Vandal's counsel merely repeated his client's allegations about one Treflan bag blowing and indicated a neighbor could testify to "some Banvel blowing around." The uncontradicted affidavit from Steve Jordan stated that Peavey sold Banvel only in liquid form and in closed containers.

Vandal has not provided credible evidence, by affidavit or equivalent means, to illustrate a genuine issue of material fact. Thus, we affirm the summary judgment for Peavey.

Defendant Bulie based his summary judgment motion on the ground that the amended settlement agreement remained in effect and released him from any further liability for the contaminated soil. The trial court agreed, dismissed with prejudice the claims against Bulie, and ordered Bulie to pay interest on past-due payments required by the settlement. We also conclude that Vandal's only available action against Bulie is enforcement of the settlement contract.

■ "In North Dakota, the law looks with favor upon compromise and settlement of controversies between parties, and where the settlement is fairly entered into, it should be considered as disposing of all disputed matters which were contemplated by the parties at the time of the settlement." *Thomas C. Roel Assoc., Inc. v. Henrikson*, 295 N.W.2d 136, 137 (N.D.1980). When a settlement is fairly made before trial, it "takes on the character of a contract ... and is final and conclusive, and based on good consideration." *Bohlman v. Big River Oil Co.*, 124 N.W.2d 835, 837 (N.D.1963). It will not be set aside

absent a showing of fraud, duress, undue influence, or other facts warranting the setting aside of a contract. *Id.*

Vandal has not alleged any facts which would warrant the setting aside of his settlement contract with Bulie.[1] Thus, we affirm the summary judgment for Bulie.

SANDSTROM, NEWMANN, LEVINE and MESCHKE, JJ., concur.

---

1. Although counsel in his brief mentions the possibility that a mutual mistake as to the cause of the damage may have entered into the settlement picture, this is not the kind of mistake which will allow for rescission. NDCC §§ 9–03–13, 14; *Lange v. Cusey*, 379 N.W.2d 775 (N.D.1985). Indeed the mistake alleged would probably not be material because, at the time of settlement, Vandal knew the extent of the damage and was dealing with Bulie as the defendant. Whether Bulie was the source of the damage because of leakage or because of negligent spraying would not be material as between Vandal and Bulie.